UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MALCOLM TANNER, | |
| Plaintiff, | |
| v. | CASE NO. 1:25-CV-460-HAB-ALT |
| GRANT COUNTY SHERIFF'S DEPARTMENT, et al., | |
| Defendants. | |

## OPINION AND ORDER

Pro se Plaintiff Malcolm Tanner ("Tanner") filed this suit against Grant County, Indiana, the Grant County Sheriff's Department, and Grant County Sheriff Del Garcia (collectively "Defendants"). (Compl., ECF 1). He asserts numerous violations of his constitutional rights under 42 U.S.C. § 1983 and a state-law claim for trespass. (*Id.*, ¶¶ 19–24).

Tanner's complaint alleges that the Sheriff's Department took over his property without notice and caused damage that rendered the property unusable. (*Id.*, ¶¶ 10–14). He says this prevented him from making the income needed to pay his property taxes and led the County to initiate tax foreclosure proceedings. (*Id.*, ¶¶ 15–17). Tanner's complaint sought injunctive relief to prevent the tax sale, compensatory damages of more than $1 billion, and punitive damages where available. (*Id.* at 3). The Court denied Tanner's request for injunctive relief on September 9, 2025. (ECF 4).

Defendants now move to dismiss what is left of Tanner's complaint. (ECF 9). They filed a brief in support of their motion. (ECF 10). Tanner had the opportunity to respond, but he did not file a response and the deadline to file one has now passed. For the reasons below, the motion will be GRANTED.

**FACTUAL BACKGROUND**

Tanner co-owns private property located at 418 W. 3rd Street in Marion, Indiana. (ECF 1, ¶ 6).[1] On January 24, 2024, the Grant County Sheriff's Department made a public Facebook post which said that Grant County Sheriff Inmate Work Crews had boarded up "the old YMCA building." (Compl. ¶ 10; ECF 1-1, at 3). That building is Tanner's private property. (*Id.*). The post "emphasized the necessity of securing the premises for public safety" due to recent incidents, "including break-ins and even a fire." (*Id.*). Tanner received no notice from the City of Marion, Grant County, or any other governmental entity before this occurred. (Compl. ¶ 11). Others entered the property in October 2024 and March 2025. (*Id.*, ¶ 13). He believes these actions were taken without legal justification. (*Id.*, ¶ 12). He further asserts that Defendants' actions caused extensive property damage, rendering it unusable and stripping Tanner of his ability to derive any economic value from it. (*Id.*, ¶ 14). This left him unable to generate income from the property, which he needed to pay property taxes. (*Id.*, ¶ 15).

On August 11, 2025, the Grant County Auditor sent Tanner a Notice of Tax Sale. (*Id.*, ¶ 16). That notice informed Tanner that his property would be auctioned off on October 24, 2025, due to unpaid taxes. (*Id.*). Shortly after receiving this notice, Tanner filed this suit seeking injunctive and monetary relief. The complaint pleads two counts under 42 U.S.C. § 1983 alleging violations of his Fourth and Fourteenth Amendment rights and one count alleging a state law trespass claim. Along with his complaint, Tanner attached a copy of the Tort Claim Notice he sent to Defendants on March 28, 2025. (ECF 1-1). The Court has denied Tanner's request for injunctive relief. (ECF 4). His claims for monetary relief remain.

---

[1] The Court takes judicial notice of public records validating his co-ownership. *418 W 3rd St*, Low Tax Info, https://lowtaxinfo.com/grantcounty/1057290-2025 (last visited Dec. 9, 2025). The other listed co-owner, Tyson Tanner, is not a party to this suit.

## **LEGAL STANDARD**

Before filing an answer, a defendant in a civil lawsuit may move to dismiss a complaint if it fails to state a claim for which relief can be granted. FED. R. CIV. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n. 1 (2002). The facts must also be viewed in the light most favorable to the plaintiff. *In re HealthCare Compare Corp. Sec. Litig.,* 75 F.3d 276, 279 (7th Cir. 1996).

The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the factual allegations must be at least facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculation level."). To be facially plausible, the complaint must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Because Tanner is proceeding pro se, his complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even so, the Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## **DISCUSSION**

Defendants contend that all claims remaining in this suit should be dismissed. For the claims against Grant County, they argue that Tanner's complaint does not actually allege misconduct by the County. They make the same argument for the claims against Sheriff Del Garcia

3

in his individual capacity, noting that the complaint makes no allegations about him specifically. For the claims against the Grant County Sheriff's Office, Defendants contend his pleadings do not adequately allege a policy or practice to subject it to municipal liability under § 1983. They also insist that Tanner does not even allege constitutional or statutory violations.

### I. Tanner Alleges No Wrongdoing by Grant County or Sheriff Del Garcia

Before reaching the substance of Tanner's complaint, Defendants first assert that Tanner's complaint includes no specific allegations of wrongdoing by either Grant County or Sheriff Del Garcia. They thus contend that any consideration of the counts in Tanner's pleading would not include them. This is accurate.

Tanner's complaint references the County only two times: naming it as a party and claiming that the sale resulted "because the County disabled his ability to maintain or profit from the property." (Compl. ¶ 17). Merely naming someone or some entity as a party in a lawsuit does not suffice to plead wrongdoing. *Twombly*, 550 U.S. at 555.

Only Tanner's claim that the County disabled his ability to maintain or profit from the property comes close to stating a claim that his rights were violated. But nothing beyond this conclusory statement in his complaint implicates the County itself. His complaint only blames the Grant County Sheriff's Office for taking over his property. The same is true of the Tort Claim Notice he sent to Defendants. Tanner might have reasonable believed that the Sheriff's Office is an agency of the County, and thus the County is liable for the actions it takes.

But under the Indiana Constitution, the Grant County Sheriff is an independently elected constitutional office distinct from the County itself. Ind. Const. art. VI, § 2. "Consequently, the Grant County Sheriff is answerable to the voting citizens of Grant County, not to the Grant County Council or its council members." *Markley v. Walters*, 790 F. Supp. 190, 191 (N.D. Ind. 1992); *see*

4

*also Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995) (describing sheriffs as "independently elected officials not subject to the control of the county"). Thus, the actions Tanner alleges the Sheriff's Office is responsible for cannot be attributed to the County.[2] *Id.* at 191–192.

The complaint is similarly bereft of specific allegations of wrongdoing by Sheriff Del Garcia. For the claims against him in his individual capacity, the absence is severe: the complaint makes no mention of him beyond naming him as a party. Tanner's Tort Claim Notice does not even mention Sheriff Del Garcia at all. No claim can be sustained when a complaint does not even allege that a defendant did anything at all, let alone that they did something wrong.

As for Tanner's claims against the Sheriff in his official capacity, they are redundant. "[Section] 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department." *Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998). So any claims against Sheriff Del Garcia in his official capacity are really claims against the Grant County Sheriff's Office, and the Court will treat them accordingly. Thus, Tanner fails to state a claim against both Grant County and Sheriff Del Garcia.

**II.** **Tanner Fails to State Claim Against Grant County Sheriff's Office**

That leaves the Grant County Sheriff's Office as the remaining defendant. Defendants argue that Tanner's complaint does not plead enough facts to state a claim for a constitutional violation. They also contend that his state law trespass claim is time-barred.

**A. Constitutional Claims**

---

[2] Tanner's complaint also mentions the Grant County Auditor's notice of tax sale. The Grant County Auditor is not a party here. To the extent that Tanner intends these allegations to be imputed to the County, they also fail because the Indiana Constitution treats County Auditors the same way as County Sheriffs. Ind. Const. art. VI, § 2. Further, he does not allege that the tax foreclosure itself was done contrary to law.

Tanner alleges that the Grant County Sheriff's Office violated his Fourth and Fourteenth amendment rights. He pursues these claims under 42 U.S.C. § 1983, which allows plaintiffs to sue any "person" acting under color of state law who subjects them to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."

The Fourth Amendment protects people and their property against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourteenth Amendment protects people from being deprived of their "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Municipalities and local government units, such as the Grant County Sheriff's Office, are "persons" that can be sued for constitutional violations under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

But this liability is limited. Municipalities "cannot be held liable for the constitutional torts of its employees and agents." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). So, to prevail against a municipality on a § 1983 claim, a plaintiff must challenge a governmental "policy or custom." *Monell*, 436 U.S. at 694. Three types of actions can create this municipal liability: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted).

Here, Tanner's complaint fails to clear these thresholds in multiple respects. First, the facts pled in his complaint do not suffice to allege a violation of his constitutional rights. Tanner asserts that his Fourth Amendment rights were violated when the Sheriff's Department trespassed on his property without a warrant or exigent circumstances. "Yet a trespass is neither necessary nor

sufficient" to prove a constitutional violation. *United States v. Tolar*, 268 F.3d 530, 532 (7th Cir. 2001); *see also Albiero v. Town of Goodland, Ind.*, No. 4:11-CV-15-JVB, 2012 WL 13699, at *5 (N.D. Ind. Jan. 3, 2012) ("[A] trespass does not itself constitute an illegal search.").

Beyond the fact of the trespass, Tanner alleges that the trespass was done without a warrant or exigent circumstances and that it caused property damage. None of these cures the deficiencies of his complaint. The Fourth Amendment does not *strictly* require a warrant. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) ("The Fourth Amendment demonstrates a '*strong preference* for searches conducted pursuant to a warrant.'" (emphasis added)). Even if no exigent circumstances were present, there are many more exceptions that allow police to conduct a search or seizure without a warrant. *See* § 3:2. Warrant preference, Search Warrant Law Deskbook § 3:2.

It is true that "unnecessary destruction of property in the course of a search may violate the Fourth Amendment." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). Tanner could bring such a claim for the destruction of his property if he identified *individual officers*. *Cf. Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). But he cannot do the same against the Sheriff's Office. *Monell* requires that he identify a policy or custom underlying this possible violation to sustain a § 1983 claim. He has not done so.

His allegations of Fourteenth Amendment violations face the same problem. On its face, Tanner's complaint does plead facts that allege a deprivation of his property. And in this context, the lack of notice *could* be material. But again, his allegations do not satisfy the requirements of *Monell*. He identifies no policy or custom of the Sheriff's Office, or decision made by Sheriff Del Garcia, that drove this deprivation of property. Thus, both his allegations of constitutional violations fail to state a claim.

### B. Trespass Claim

Tanner lastly asserts a state-law claim for trespass. Defendants do not contest the complaint factually states a claim for trespass. They instead argue that Tanner's complaint is barred by the Indiana Tort Claims Act ("ITCA"). They are correct, but only in part.

The ITCA requires plaintiffs pursuing tort claims against political subdivisions to file notice within 180 days. Ind. Code § 34-13-3-8(a). Tanner submitted his Tort Claim Notice on March 28, 2025. His most specific trespass allegations relate to the inmate work and boarding of his building that the Sheriff's Office mentioned in its Facebook post, which happened in January 2024. Thus, Tanner's notice of his trespass claim submitted more than one year later is thoroughly time-barred. But Tanner's complaint also alleges more recent trespasses in October 2024 and March 2025. Both dates are within six months of the Tort Claim Notice he filed, so the ITCA would not bar those claims of trespass.

However, that does not mean this Court can hear the trespass claim. Because it arose from the "same case or controversy" as Tanner's federal § 1983 claims alleging constitutional violations, the Court was able to exercise supplemental jurisdiction over it. *See* 28 U.S.C. § 1367. But now that the Court has dismissed all claims it had original jurisdiction over, the Court must address whether to retain jurisdiction over the lone remaining claim under state law.

The Seventh Circuit has consistently stated "that the usual practice" within the circuit "is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pendant state claims"). But there are "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left

8

to the state courts." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1252 (7th Cir. 1994). This is because there are occasionally "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*. at 1251.

The first example discussed in *Wright* occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* That concern is not present here. This exception covers claims that were timely when filed but would be untimely if remanded. *Cf. Duckworth v. Franzen*, 780 F.2d 645, 656–57 (7th Cir. 1985). His trespass allegations stemming from January 2024 were already time-barred when he filed notice, so they could not be pursued in either venue. And his allegations of trespass from October 2024 and onward were timely. Even if the statute of limitations were to have run on his post-October 2024 allegations, Indiana law gives a plaintiff three years after a dismissal of state-law claims in federal court on jurisdictional grounds to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co*., 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, this case is less than four months old and has not evolved beyond the pleading stage. While the Court does all its work diligently, it cannot yet be said that *substantial* judicial resources have been expended.

The third circumstance where disposition of pendent state-law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. And if the state-

9

law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. But "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. The Court cannot say with certainty that the timely trespass claims are frivolous. But the Court likewise cannot say they are meritorious either. This lack of certainty combined with general principles of comity lead this Court to conclude that relinquishment of jurisdiction would be appropriate in the absence of viable federal claims.

### III.    Leave to Amend

That said, the Court need not dispose of this case and remand the state-law claim just yet. Courts generally must permit civil plaintiffs at least one opportunity to amend their pleadings unless amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (citing *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)). His trespass allegations from January 2024 are time-barred by the ITCA. No amendment will change that.

But Tanner's other claims could be cured by amendment. Tanner could allege a specific policy or practice that Grant County Sheriff's Office engaged in. He could make more detailed factual allegations that would implicate the County or Sheriff Del Garcia. He could provide more details to identify individual officers who engaged in unconstitutional conduct. And should he succeed in reviving the viability of his federal claims, the Court could then properly exercise pendent jurisdiction over what remains of his state law trespass claim.

Because Tanner could provide more information sufficient to state a claim on the counts that gave this Court jurisdiction, the Court will grant him leave to amend his complaint.

### CONCLUSION

Defendants' Motion to Dismiss (ECF 9) is GRANTED. Counts I and II are DISMISSED with leave to amend. Count III is DISMISSED WITH PREJUDICE as to allegations of a January 2024 trespass. Count III is DISMISSED WITHOUT PREJUDICE as to allegations of trespass that occurred in October 2024 or later pending the filing of an amended complaint that establishes this Court's jurisdiction.

The Court ORDERS Tanner to file an amended complaint no later than January 16, 2026. Failure to abide by this deadline will result in the Court dismissing Counts I and II with prejudice and dismissing what remains of Count III without prejudice to refiling in state court.

**SO ORDERED** on December 17, 2025.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT
