**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

MALCOLM TANNER,

Plaintiff,

v.

GRANT COUNTY SHERIFF'S DEPARTMENT, et al.,

Defendants.

CASE NO. 1:25-CV-460-HAB-ALT

**OPINION AND ORDER**

Pro se Plaintiff Malcolm Tanner ("Tanner") originally filed this suit against Grant County ("the County"), Indiana, the Grant County Sheriff's Department ("the Department"), and Grant County Sheriff Del Garcia ("Sheriff Garcia"). (ECF 1). On December 17, 2025, the Court dismissed Tanner's Complaint but granted him leave to amend some of his claims. (ECF 16).

Tanner timely filed an Amended Complaint (ECF 17) reasserting the claims against the County and Sheriff Garcia, removing the Department and adding the City of Marion, Indiana ("The City"), several "John Doe" City employees and Sheriff's deputies, and several "John Doe" Grant County inmates as Defendants (*Id.*). He asserts numerous violations of his constitutional rights under 42 U.S.C. § 1983 and state-law claims for trespass. (*Id.*)

The City and its employees ("The City Defendants"), and the County, Sheriff Garcia and the John Doe deputies ("The County Defendants) filed motions to dismiss Tanner's Amended Complaint, along with briefs in support. (ECF 21, 22, 28, 29). Tanner did not respond to either motion. Because Tanner fails to state claims against the City and its employees, the City Defendants' motion will be GRANTED. As for the County Defendants, their motion will be GRANTED IN PART and DENIED IN PART.

**FACTUAL BACKGROUND**

The following facts are alleged in Tanner's Amended Complaint:[1] Tanner co-owns a commercial property located at 418 W. 3rd Street in Marion, Indiana. (ECF 17, ¶ 4).[2] Sheriff Garcia, the elected Grant County Sheriff, personally directed or authorized unlawful entry onto this property and had it boarded up. (*Id.*, ¶ 11). On January 24, 2024, Sheriff Garcia approved a public post on the Department's Facebook page boasting of these efforts to board up the property. (*Id.*).

The Amended Complaint alleges sheriff's deputies and County jail inmate work crews entered the property on at least four specific dates between October 2024 and March 2025 without a warrant, notice, or court order. (*Id.*, ¶¶ 12–13).[3] While there, the deputies expressly warned Tanner not to enter his property under the threat of arrest. (*Id.*, ¶ 13).

Tanner alleges Sheriff Garcia, acting as the final policymaker for the Department,[4] authorized these actions pursuant to a longstanding practice and unwritten policy of using inmate

---

[1] Tanner's Amended Complaint attempts to incorporate facts from his Original Complaint. (ECF 17, ¶ 10). He cannot do this. "An amended pleading supersedes the original." *Pirant v. U.S. Postal Serv.*, 542 F.3d 202, 207 (7th Cir. 2008). As a result, "facts or admissions from an earlier complaint that are not included in a later complaint cannot be considered on a motion to dismiss." *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 782–83 (7th Cir. 2013). The local rules further preclude Tanner from incorporating other pleadings by reference into an amended pleading. N.D. Ind. L-R 15-1(b)(2) ("Amendments to a pleading . . . must not incorporate another pleading by reference."). Accordingly, the Court will not consider facts from Plaintiff's Original Complaint in ruling on these motions to dismiss unless they have been properly reasserted in his Amended Complaint.

To that end, Tanner references the Notice of Tort Claim in his Amended Complaint and both motions to dismiss address it. Thus, the Court will consider the Notice of Tort Claim attached to his Original Complaint. (ECF 1-1).

[2] The Court takes judicial notice of public records validating his co-ownership. *418 W 3rd St*, LOW TAX INFO, https://lowtaxinfo.com/grantcounty/1057290-2025 (last visited Aug. 19, 2026). The other listed co-owner, Tyson Tanner, is not a party to this suit.

[3] The dates are October 18, 2024, November 15, 2024, January 7, 2025, and March 7, 2025. (ECF 17, ¶ 13).

[4] Tanner's Amended Complaint still contains several allegations against the Department despite them no longer being a party. (ECF 17). Legally speaking, allegations against Sheriff Garcia in his official capacity and allegations against the Department are largely one and the same. *See infra*. So, for clarity's sake and to construe Tanner's Amended Complaint liberally as it must, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the Court attributes allegations Tanner

labor crews to "secure" private property without legal process based on the Sheriff's unilateral judgment. (*Id.*, ¶ 15). He claims the policy has been carried out on multiple properties in Marion over two years. (*Id.*). Tanner also asserts, upon information or belief, that Sheriff Garcia "established this policy, trained deputies to implement it, or failed to correct it despite notice." (*Id.*, ¶ 16). The implementation of the policy led to property damage, income loss, and tax delinquency. (*Id.*, ¶ 17). Tanner also asserts this all led to a de facto condemnation of his property without due process. (*Id.*, ¶ 23).

To bolster his claims, Tanner interviewed former Grant County Jail inmate Brian Sparks ("Sparks") and called the City's Code Enforcement Department. (*Id.*, ¶¶ 14A–14B).[5] In March 2025, Sparks purportedly told Tanner that he and other inmates entered Tanner's building under the direction of Sheriff's deputies. (*Id.*, ¶ 14A). Sparks stated that he understood the building to be private property, and that the owner (Tanner) had not granted them permission to enter. (*Id.*). Sparks also told Tanner he was not shown any court order or warrant to enter the premises. (*Id.*).

Tanner called the City's Code Enforcement Department later that month. (*Id.*, ¶ 14B). An unknown City employee confirmed that there had been no fire or code violations at Tanner's property in the preceding two to three years. (*Id.*). Although some complaints were made about Tanner's building being "unsecured," the City had no record of any violations or notices of violations that were sent to Tanner. (*Id.*).

## <u>LEGAL STANDARDS</u>

### I. <u>Motion to Dismiss Standard</u>

---

makes against the Sheriff's Department as a whole to Sheriff Garcia in his official capacity to avoid confusion over the Department's status as a non-party.

[5] The Amended Complaint states that transcripts of both conversations are attached as exhibits. (ECF 17, ¶¶ 14A–14B). Tanner attached no exhibits to his Amended Complaint.

Before filing an answer, a defendant in a civil lawsuit may move to dismiss a complaint if it fails to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508 n. 1 (2002). The facts must also be viewed in the light most favorable to the plaintiff. *In re HealthCare Compare Corp. Sec. Litig.,* 75 F.3d 276, 279 (7th Cir. 1996).

The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and the factual allegations must be at least facially plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculation level."). To be facially plausible, the complaint must allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Because Tanner is proceeding pro se, his complaint must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even so, the Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II. § 1983 Claims

Tanner's complaint includes claims against several Defendants for Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983. The Fourth Amendment protects people and their property against "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourteenth

Amendment protects people from being deprived of their "life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

Under § 1983, plaintiffs can sue any "person" acting under color of state law who subjects them to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." These claims can be brought against Defendants in either their individual or official capacities. *Kentucky v. Graham*, 473 U.S. 159, 163–64 (1985). For all intents and purposes, official capacity claims against employees of a local government entities are "treated as a suit against the entit[ies]." *Id.* at 165. So even though the Department is no longer a Defendant here, the official capacity claims against Sheriff Garcia and his deputies are treated the same as claims against the Department. *See Franklin v. Zaruba*, 150 F.3d 682, 686 (7th Cir. 1998) ("§ 1983 suits against sheriffs in their official capacities are in reality suits against the county sheriff's department . . . .").

Local government entities can be sued for constitutional violations under § 1983, but only for policies and customs, not individual acts. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). So, to proceed against the City, the County, or Sheriff Garcia and his deputies in their official capacities, Tanner must allege "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Spiegel v. McClintic*, 916 F.3d 611, 617 (7th Cir. 2019) (quotation marks omitted).

## DISCUSSION

Tanner's Amended Complaint, while not a model of clarity, asserts claims under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights and a pendant state law trespass claim. He brings official capacity claims against the City and its employees, the County,

and Sheriff Garcia along with the John Doe Deputies and unnamed inmate work crews. Individually, he sues the City employees, Sheriff Garcia, John Doe Deputies and the unnamed inmate work crews. For his state law trespass claim, he names all Defendants. The Court will address each claim in turn.

## I. Official Capacity Claims Against the City And Its Employees

Tanner's Amended Complaint asserts official capacity claims against the City based on an alleged policy or custom. The Amended Complaint also indicates Tanner is suing city employees in their "official capacity." The City moves to dismiss all the official claims against it and its employees.

The official capacity allegations against the City employees are really claims against the City. A suit against an individual defendant in his official capacity is a claim against the municipality of which the official is an agent. *Richman v. Sheahan,* 270 F.3d 430, 439 (7th Cir. 2001). Further, to the extent Tanner's suit is against the employees in their individual capacity, the City cannot be liable for their actions. Indeed, any actions taken by the City employees in their individual capacity, even if they stated a claim (see below), do not impute liability to the City because municipalities "cannot be held liable for the constitutional torts of its employees and agents." *First Midwest Bank Guardian of Est. of LaPorta v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021). For these reasons then, the official capacity claim against the unnamed City employees is DISMISSED.

That leaves the official capacity claim against the City. The Amended Complaint alleges that the City acted pursuant to an unlawful policy or custom. But Tanner fails to plead facts that connect the conduct of any City employee to such policy or custom. Indeed, "a plaintiff asserting a *Monell* claim… cannot survive a motion to dismiss when …[the] claim rests solely on conclusory

allegations of a *de facto* municipal policy and fails to allege any well pled facts of any occurrence or policy other than the single incident involving the plaintiff." *Scott v. Buncich*, No. 2:16-CV-114, 2016 WL 5341309 at *7 (N.D. Ind. Sept. 23, 2016). Here, Tanner makes only threadbare recitals of the elements of a cause of action, supported by conclusory statements. This is insufficient to state a claim or to demonstrate an entitlement to relief beyond a speculative level. *See Iqbal*, 556 U.S. at 678. The City's Motion to Dismiss the official capacity claims against it is GRANTED.[6]

## II. Official Capacity Claims Against the County Defendants

### A. The County

The County Defendants argue that Tanner's Amended Complaint fails to make any factual allegations against the County itself, let alone allegations of wrongdoing. The Court agrees.

Tanner lodges plenty of factual allegations against the Department and Sheriff Garcia. But as the Court explained in its last order dismissing Tanner's Original Complaint:

> [U]nder the Indiana Constitution, the Grant County Sheriff is an independently elected constitutional office distinct from the County itself. Ind. Const. art. VI, § 2. "Consequently, the Grant County Sheriff is answerable to the voting citizens of Grant County, not to the Grant County Council or its council members." *Markley v. Walters*, 790 F. Supp. 190, 191 (N.D. Ind. 1992); *see also Ryan v. County of DuPage*, 45 F.3d 1090, 1092 (7th Cir. 1995) (describing sheriffs as "independently elected officials not subject to the control of the county"). Thus, the actions Tanner alleges the Sheriff's Office is responsible for cannot be attributed to the County.

(ECF 16, at 4–5).

---

[6] While the norm is to afford a plaintiff at least one opportunity to amend his complaint, Tanner has already had one such opportunity and he did not respond to the motion to dismiss or otherwise seek leave to amend. *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) (denying leave to amend is proper when "the plaintiff has already had multiple chances to cure deficiencies").

In light of that authority, once the Court removes references to the Department and Sheriff Garcia, the Amended Complaint makes no mention of the County. Nothing in the Complaint suggests that the County maintained a policy or custom to trespass on private property without due process or that County officials acted pursuant to such a policy or custom. Thus, Tanner has pleaded no facts from which he could obtain relief from the County. The County Defendants' motion to dismiss the County is GRANTED.

### B. Official Capacity Claims Against Sheriff Garcia and the John Doe Deputies

Tanner's Amended Complaint alleges that Sheriff Garcia, as the final policymaker for the Department, implemented or carried out a policy or custom of "securing" private property without legal process based on his own unilateral judgment. He also seeks to hold the John Doe Deputies liable in their official capacities for their actions in carrying out the policy.

Like with the City employees, claims against the John Doe Deputies in their official capacity are the equivalent of a suit against the employing agency. As a result, the official capacity claim here is against the Sheriff, not the John Doe Deputies. That said, Tanner attests that the John Doe Deputies and Inmates acted pursuant to Sheriff Garcia's policy on at least four occasions, which resulted in unnecessary damage to his property and his unlawful exclusion from it. He also asserts that the policy has been used in the past by Sheriff Garcia to unlawfully trespass on the private property of others.

Sheriff Garcia seeks to dismiss this claim, asserting that the facts are insufficient to maintain a *Monell* claim. He argues that even if the policy alleged in the Amended Complaint exists and violates the Constitution, Tanner's allegations are too bare-boned or conclusory and should not be entitled to the presumption of truth.

Of course, courts can dismiss complaints that only contain "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But Tanner's allegations of an unconstitutional policy do not fit that mold. Rather, he has gone beyond "threadbare recitals" and included supporting facts such as the dates the policy was allegedly used to justify trespass on his property and the actors (to some extent) who carried out the trespass. Reading the factual allegations favorably to Tanner as the Court must, these are sufficient factual allegations to show that there was a true policy at issue, not a random event. *See Liska v. Dart*, 60 F. Supp. 3d 889, 905 (N.D. Ill. 2014).

Tanner also alleges that the unconstitutional policy was regularly used by the Sheriff to engage in similar trespasses on others' property. At this stage, he is "not required to identify every other or even one other individual" who was harmed by a suspected unconstitutional pattern or practice when stating a *Monell* claim. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). These allegations are sufficient to raise a question, above mere speculation, that a policy both exists and was utilized.

Discovery will reveal whether Tanner can prove that the Sheriff maintained an unconstitutional de facto policy. It is enough at this stage to allege that such a policy exists, with specific facts to render it plausible (not probable). *See Iqbal*, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement.'") (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2009)). Accordingly, the Court finds that Tanner has pleaded enough at this stage to state a *Monell* claim against Sheriff Garcia. The motion to dismiss the official capacity claim against Sheriff Garcia is, therefore, DENIED.

## III. Individual Capacity Claims

### A. Sheriff Garcia

Tanner also brings claims against Sheriff Garcia in his individual capacity. Sheriff Garcia argues that the Amended Complaint fails to allege his personal involvement in any actions taken against Tanner. He also contends that the Amended Complaint fails to state a Fourth Amendment claim against anyone.

While § 1983 "lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim," Sheriff Garcia's "direct participation is not necessary." *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003). It is enough for Tanner to allege that Sheriff Garcia knew of or "acquiesced in some demonstrable way in the alleged constitutional violation." *Id.*

Tanner has pleaded enough to proceed against Sheriff Garcia on his individual capacity § 1983 claims. Tanner alleges the deputies and the County Jail inmates repeatedly entered his property without legal authorization or consent and caused damage by boarding up his property. Tanner claims the deputies explicitly excluded him from his property. Most importantly, though, he alleges this all occurred at Sheriff Garcia's personal direction. These are enough to plead individual claims against Sheriff Garcia for Fourth and Fourteenth Amendment violations. *See United States v. Ramirez*, 523 U.S. 65, 71 (1998) ("[U]nnecessary destruction of property in the course of a search may violate the Fourth Amendment."); *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (noting plaintiffs can bring Fourth Amendment claims under § 1983 for property destruction so long as individual officers are identified). Although "§ 1983 does not allow actions against individuals merely for their supervisor role of others," *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000), Tanner alleges Sheriff Garcia's personal involvement here. Thus, his constitutional claims against Sheriff Garcia in his individual capacity can proceed.

### B. <u>John Doe Deputies and Unnamed Inmate Work Crews</u>

The County Defendants also move to dismiss the claims against the John Doe Deputies and Inmates. They argue that Seventh Circuit precedent precludes Tanner from naming anonymous defendants in his Amended Complaint.

Certainly, filing a complaint against an unnamed party "is viewed with disfavor." *Strauss v. City of Chicago*, 760 F.2d 765, 770 n.6 (7th Cir. 1985). But it is not improper so long as Tanner alleges "personal involvement in the alleged constitutional deprivation," *Colbert*, 851 F.3d at 657, and each Defendant can "know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Here, Tanner alleges that John Doe Deputies 1–10 and John Doe Inmates 1–10[7] entered his property and excluded him from it without legal authority to do so. He asserts that their entry caused unnecessary damage to his property. Although these John Does are unnamed, Tanner has pleaded enough information to make these individuals identifiable by Sheriff Garcia: he alleges specific conduct by individuals belonging to specific groups under his direction on specific dates at a specific place. Tanner further alleges that the John Doe Deputies acted pursuant to Sheriff Garcia's policy, which the Court has noted would violate the Constitution if true. Accordingly, Tanner can proceed on all his individual capacity § 1983 claims against the John Does.[8]

---

[7] Tanner identifies ten John Does each in the header of his Amended Complaint, but only five when naming parties. (ECF 17, at 1–2). For purposes of the motion, and to construe the complaint liberally as it must, the Court assumes Tanner meant to identify ten John Doe Deputies and ten John Doe inmates.

[8] The Court has struggled to identify any case where inmates have been found to act under color of state law. Inmates have often been found *not* to be acting under color of state law. *See Goodell v. Anthony*, 157 F. Supp. 2d 796, 801 (E.D. Mich. 2001) (collecting cases); *Lacy v. Berge,* 921 F. Supp. 600, 611 (E.D. Wis. 1996) (inmate who was not a government employee, and who was not acting under color of state law when he fought with another inmate, was not subject to suit under § 1983). But the examples the Court has located all fall well short of alleging that inmates were government employees or that there was such a ""close nexus between the State and the challenged action" that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351). Here, Tanner alleges that the John Doe inmates performed work at the direction of Sheriff Garcia and the John Doe deputies, who engaged in largely the same conduct. The Court concludes, at this stage, that this suffices to allege the inmates acted under color of state law.

That said, Tanner cannot proceed against unnamed Defendants forever. He will eventually need to name them and allege their personal involvement in the Constitutional deprivation. *See Colbert*, 851 F.3d at 657 ("[Plaintiff] later admitted that he was unable to identify which of the ten searching officers had caused the alleged property damage . . . . Had [Plaintiff] faced a motion to dismiss, . . . his theory of the case that the four named officers were responsible for the alleged damage may have been sufficient. At summary judgment, however, [Plaintiff] must put forth evidence to support that claim."). He will also need to amend his complaint again to add their names before the statute of limitations expires. *Herrera v. Cleveland*, 8 F.4th 493, 494–95 (7th Cir. 2021).

In Indiana, the statute of limitations period for a § 1983 claim is two years. *Terry v. Calhoun*, No. 1:17-CV-440-TLS, 2018 WL 6308998, at *3 (N.D. Ind. Dec. 3, 2018) (citing *Campbell v. Chappelow*, 95 F.3d 576, 580 (7th Cir. 1996) and Ind. Code § 34-11-2-4). Because the first alleged violation occurred in October 2024, Tanner's window to amend is on the brink of closing. To ensure Tanner can amend in time, the Court will order Sheriff Garcia to identify the individual deputies and the inmate work crews that were present on Tanner's property on the dates set forth in the Amended Complaint.

## IV. State Law Trespass Claims

Both the City and County Defendants move to dismiss the state law trespass claims against them. The Court addresses each set of Defendants in turn below.

### A. The City Defendants

Turning first to the City Defendants, they argue that the Amended Complaint lacks any facts to suggest the City or its employees trespassed on his property. "To establish a claim for trespass, a plaintiff must establish that (1) 'he possessed the land when the alleged trespass

occurred' and (2) 'that the trespassing defendant entered the land without a legal right to do so.'" *Anton Realty, LLC v. Guardian Brokers Ltd., Inc.*, No. 1:13-CV-01915-JMS, 2015 WL 4041517, at *13 (S.D. Ind. July 1, 2015) (quoting *KB Home Ind. Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297, 308 (Ind. Ct. App. 2010)).

The Amended Complaint indeed lacks the facts needed to state a trespass claim under Indiana law. Tanner pleads that he owns the property in question. But the only facts in the Amended Complaint about City employees relate to Tanner's phone call and a vague assertion of cooperation with Sheriff Garcia. Even when the Amended Complaint is construed in the manner most charitable to Tanner, he has not alleged that the City Defendants unlawfully entered his property.

But even if the Complaint did state a trespass claim against the City Defendants, Tanner's claim would be barred by the ITCA. The ITCA governs lawsuits against municipalities and government employees who commit torts within the scope of their employment. Ind. Code § 34-13-3-3. The ITCA bars plaintiffs from suing governmental entities for "the adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations)." Ind. Code § 34-13-3-8(a)(8)(A). Additionally, plaintiffs cannot sue individual employees personally if they allege that the employees "acted within the scope of [their] employment." Ind. Code § 34-13-3-5(b); *see also Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014). An employee's actions fall within the scope of their employment "if [their] purpose was, to an appreciable extent, to further [their] employer's business." *Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989).

The ITCA also has a notice requirement. Plaintiffs pursuing tort claims against political subdivisions must file notice within 180 days. Ind. Code § 34-13-3-8(a). That notice must be filed

with the correct governmental entity for notice to suffice. *Goff v. Bourbeau*, No. 2:20-CV-00019-JPH-MJD, 2022 WL 4599204, at *5 (S.D. Ind. Sept. 30, 2022).

The City Defendants assert that Tanner never sent a Notice of Tort Claim to it or any employees. Tanner has failed to respond to this assertion, and he did not attach a Notice of Tort Claim to his Amended Complaint. Although he attached one to his Original Complaint, that only put the County and the Department on notice, not the City. (ECF 1-1). Tanner had 180 days to file this notice from the date of loss, and he alleges no unlawful actions after March 2025. The window to submit notice has long since passed.

And the City Defendants rightly point out that even if Tanner gave notice to the City Defendants, the ITCA would still immunize them. Although Tanner's Amended Complaint alleges that no code violations existed on his property, he alleges that City officials cooperated with Sheriff Garcia's deputies who entered the property and boarded it up. In essence, he alleges enforcement activity, just without proper legal basis. Nowhere has he suggested otherwise. Thus, the actions would necessarily have been in furtherance of government functions for which the ITCA immunizes them. And because Tanner's Amended Complaint does not allege that City employees acted outside the scope of their employment, claims against them are barred as well.

For these reasons, the City Defendants' motion to dismiss the trespass claim is GRANTED.

### B. Sheriff Garcia, John Doe Deputies, and Inmates

Like the City Defendants, the County Defendants argue that the Amended Complaint fails to state a trespass claim against Sheriff Garcia, his deputies, and the inmates. But this is not a fair reading of the Amended Complaint. Tanner alleges that he owns the property in question and that the John Doe Deputies and unnamed inmates entered the property or directed others to do so without legal justification. This is enough to state a claim for trespass.

That said, however, Tanner's Amended Complaint fails to allege that these individuals were acting outside the scope of their employment (or delegated government functions) which would take the trespass claim outside the reach of the immunity granted by the ITCA. For this reason, as with the City Defendants, the ITCA bars his trespass claim against the County Defendants.

The County Defendants' motion to dismiss the state law trespass claim is GRANTED.

## CONCLUSION

The City's Motion to Dismiss (ECF 28) is GRANTED. The County Defendants' Motion to Dismiss (ECF 21) is GRANTED IN PART as to claims against the County and all trespass claims. It is DENIED IN PART as to the § 1983 claims against Sheriff Garcia in both his official and individual capacities, John Doe Deputies 1–10 in their individual capacities, and John Doe Inmates 1–10 in their individual capacities.

The Court ORDERS Sheriff Garcia to provide Tanner the identities of the deputies and inmates who entered his property between October 2024 and March 2025 on the dates specified in the Amended Complaint within ten (10) days of receiving notice of this Opinion and Order.

**SO ORDERED** on September 11, 2026.

s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT